IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DURWARD J MELTON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **2:12-cv-2099-AKK** |
| **ERIC H. HOLDER, JR., in his** ) | |
| **official capacity as Attorney** ) | |
| **General of the United States** ) | |
| **Department of Justice,** ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

Durward J. Melton filed this lawsuit seeking damages, a declaratory judgment, and injunctive relief against the United States Department of Justice ("DOJ") alleging that his former employer the Federal Bureau of Investigation ("FBI") retaliated against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Doc. 1. DOJ filed a motion to dismiss for failure to state a claim upon which relief can be granted. Doc. 5. The motion is fully briefed and ripe for adjudication. Docs. 10 and 11. For the reasons stated below, the court **GRANTS** the motion.

### I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*.

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id*.; *see also Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to

relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

## II. PROCEDURAL AND FACTUAL BACKGROUND[1]

*A.     Melton's employment with the FBI*

Melton worked for the FBI for twenty years and received "excellent ratings on his performance evaluations." Doc. 1 at ¶¶ 9, 10. In January 2008, Melton consulted Lorenza Moore, former Equal Employment Opportunity Coordinator, "regarding EEO counseling."[2] *Id*. at ¶ 11. Moore advised Melton to "seek counseling anonymously" to avoid the troublemaker label. *Id*. at ¶¶ 11, 16. Allegedly, Moore failed to provide Melton EEO information advising him of his rights. *Id*. at ¶ 16. Moreover, when Melton occasionally asked Moore about "his case," Moore responded simply, "wait and see." *Id*.

Melton received several personnel actions after he complained to Moore. Also, two weeks after Melton's initial contact with Moore, the FBI transferred

---

[1]"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009).

[2]The Complaint fails to explain why Melton sought EEO counseling.

Melton to White Collar Crime. *Id.* at ¶ 17. Although Melton met with Moore on several occasions after the transfer, Moore continued to advise Melton to "wait and see" or "hold off." *Id*. at ¶ 19. Moreover, the alleged retaliation continued after the transfer. Specifically, Tom Class, FBI Supervisory Special Agent, placed Melton on 60-day file reviews rather than the standard 90-day practice. *Id.* Thereafter, in June 2008, the FBI informed Melton that he was "the subject of an Office of Professional Responsibility ["OPR"] investigation." *Id*. ¶ 20. Several months later, the FBI transferred Melton to the Field Intelligence Group. *Id*. ¶ 21. Then in November 2008, the FBI interviewed Melton regarding the OPR investigation. *Id*. ¶ 22. Melton consulted with Moore after each of these occurrences and Moore advised Melton that "the OPR [investigation] would be part of the ongoing harassment" investigation and to "wait and see." *Id*. ¶¶ 20-22.

   B. *Melton's 2009 EEO Complaint and corresponding lawsuit*

On February 24, 2009, Melton received an OPR sanctions letter recommending a sixty-day suspension and a "mandatory inter-divisional transfer." *Id*. at ¶ 23. Moore advised Melton that he had forty-five days to file a complaint with Special Agent Rebecca Ellingwood regarding the letter. *Id*. Consequently, on April 7, 2009, Melton initiated contact with a DOJ EEO officer and subsequently filed an EEO Complaint on June 25, 2009, alleging that the FBI

discriminated against him based on his sex and age by labeling him a troublemaker, subjecting him to an OPR investigation in June 2008, and issuing the OPR letter proposing a sixty-day suspension and mandatory transfer in February 2009.  Case No:  4:10-cv-3205-CLS, doc. 6-1 at 5, 6, 16.  Melton resigned from the FBI the next day.  Doc. 1 at 1.

On November 23, 2009, the FBI dismissed Melton's EEO Complaint regarding the troublemaker allegation and the June 2008 OPR investigation as untimely since Melton's contact with the EEO counselor on April 7, 2009 occurred well after the 45-day deadline.  Case No:  4:10-cv-3205-CLS, doc. 6-2 at 1-2.  The FBI also found that the OPR letter *proposed* a suspension and transfer and, therefore, was insufficient to show that Melton had suffered an adverse action with respect to his employment and that Melton's resignation foreclosed any expectation that an adverse action would occur.  *Id*. at 3.  The Equal Employment Opportunity Commission Office of Federal Operations affirmed the FBI's decision.  *Id.* at 6-3 at 2.

On November 22, 2010, Melton filed a Complaint in this court (the "first lawsuit") against the DOJ alleging retaliation and age and sex discrimination in violation of Title VII based on the allegations outlined in his EEO Complaint.  Case No:  4:10-cv-3205-CLS, doc. 1 at ¶¶ 29, 32, 33-47, 54.  Melton also

challenged his voluntary separation from the FBI by seeking back pay and front pay. *Id*. at 11 ¶ 55 and 12 ¶ 3. After the DOJ filed a motion to dismiss for lack of subject matter jurisdiction, *id*. at doc. 6, Magistrate Judge Robert Armstrong entered a report and recommendation to dismiss the lawsuit, finding that Melton's November 2008 OPR interview was the most recent alleged discriminatory act and that Melton initially contacted an EEO counselor in April 2009, well past the 45-day deadline.[3] *Id*. at doc. 10. Melton failed to file an objection within the fourteen-day deadline. Judge Lynwood Smith adopted the report and dismissed the action. *Id*. at doc. 11.

C.   *Melton's 2011 EEO Complaint and corresponding lawsuit*

Two years later, on September 21, 2011, Melton initiated contact with the DOJ EEO office and filed an EEO Complaint on November 22, 2011, challenging his June 2009 resignation from the FBI. Doc. 1-1 at 2. Melton alleged that he learned on August 23, 2011 that Special Agent in Charge Carmen Adams, Moore, Ellingwood, and others retaliated against him and "caused a hostile work environment from a previous EEO protected activity beginning in January 2008." *Id*. at 2. Specifically, echoing the claims he raised in his EEO Complaint in 2009, Melton's "new" EEO Complaint alleges that (1) he was reassigned to another

---

[3]The court noted that even if it considered Melton's January 9, 2008 counseling with Moore, Melton's claims are still untimely. Case No: 4:10-cv-3205-CLS, doc. 10 at 3 n.2.

squad, required to undergo 60-day file reviews instead of the customary 90-day reviews, and was the subject of an OPR investigation that ultimately resulted in a proposed transfer and sixty-day suspension without pay, (2) Moore encouraged him to seek counseling anonymously to avoid the "troublemaker" label, failed to advise him of his rights, and divulged protected EEO information, and (3) for the first time, that he was constructively discharged. *Id.* at 2-3.  To no surprise, the FBI dismissed Melton's EEO Complaint because Melton had already raised these allegations in his 2010 lawsuit.  Doc. 1-2 at 2.  As it relates to Melton's sole "new" allegation, i.e. constructive discharge, the FBI found that Melton should have raised this claim in his June 25, 2009 EEO Complaint and that the claim is untimely.  *Id*. at 3.

On June 7, 2012, Melton filed this lawsuit alleging that the FBI retaliated against him in violation of Title VII.  Doc. 1  at ¶¶ 34-36.  Allegedly, the "most recent" retaliatory act occurred on June 26, 2009, when Melton resigned his employment "as a result of repetitive discrimination and retaliation by the FBI." *Id*. at ¶ 1.  Melton maintains that he discovered the FBI's alleged "most recent" retaliation on August 23, 2011 after reviewing lawsuits filed by Paul Daymond and Jessica Wallace.  *Id*. at ¶ 33; *see also* ¶ 28, 29.

## III. ANALYSIS

The court will only address Melton's "most recent" allegation since the other issues he raised are identical to those that made up his 2010 lawsuit. Melton had an opportunity to challenge the magistrate judge's report and recommendation that the court lacked subject matter jurisdiction and failed to do so. Likewise, he failed to appeal Judge Smith's dismissal of his case. The time to do so has long passed and his attempt to do so now by refiling these claims fails for a host of reasons. *See, e.g., I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986) (issue preclusion "forecloses relitigation of an issue of fact or law" if: (1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue was actually litigated in the prior suit; (3) the determination of the issue in the prior litigation was "a critical and necessary part of the judgment in that action;" and (4) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding) (citations omitted); *N. Ga. Elec. Membership Corp. v. City of Calhoun, Ga.*, 989 F.2d 429, 433 (11th Cir. 1993), *citing Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir. 1980) (citations omitted) ("Although the dismissal of a complaint for lack of jurisdiction does not adjudicate the merits so as to make the case res judicata on the substance of the asserted claim, it does adjudicate the court's jurisdiction, and a second

complaint cannot command a second consideration of the same jurisdictional claims.").

As to Melton's "most recent" claim, since Melton sought relief for the resignation in his first lawsuit by asking for lost wages and front pay, the court is confounded by Melton's contention that he only learned in August 2011 that his *own* decision to resign in June 2009 was not voluntary. Case No: 4:10-cv-3205-CLS*,* doc. 1 at 11 ¶ 55 and 12 ¶ 3. Although Melton failed to specifically allege that the FBI constructively discharged him, lost wages and front pay are remedies a party who resigned can recover only if he maintains that he was forced to resign. *See Gowski v. Peake*, 682 F.3d 1299, 1310 n.10 (11th Cir. 2012) (finding that the district court properly vacated the lost wages award based on the undisputed fact that no constructive discharge occurred). Therefore, Melton's first lawsuit belies his contention that he only learned in 2011 that the FBI forced him to resign in 2009. Put differently, Melton's purported "most recent" claim faces the same procedural hurdles as the other claims in his first lawsuit.

Even if the court suspends reality and finds that this lawsuit raises new and different claims from the first lawsuit, Melton's claims still fail because of Melton's failure to timely exhaust his administrative remedies. Prior to filing a Title VII lawsuit, a federal employee must first seek reconciliation from the

agency where the discrimination occurred. *Brown v. Gen. Servs. Admin.*, 425 U.S. 830, 832 (1976). Equal Employment Opportunity Commission regulations require that federal employees "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action," or the claim is barred. 29 C.F.R. § 1614.105(a)(1); *Ramirez v. Sec., U.S. Dept. of Transp.*, 686 F.3d 1239, 1243 (11th Cir. 2012); *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008).

Unfortunately for Melton, based on his Complaint and response in opposition to the motion to dismiss, it is undisputed that he failed to timely exhaust his administrative remedies. As adverse employment actions, Melton cites the following:

> Plaintiff met the adverse action prong when SAC Adams launched an OPR Investigation and transferred Plaintiff two weeks after he sought EEO counseling. Plaintiff contends the involuntary transfer of an employee, particularly one who had just filed an EEO complaint, would deter a reasonable person from making or supporting a charge of discrimination.

Doc. 10 at 4-5. Based on Melton's Complaint, the transfer occurred around January 2008 and the OPR investigation occurred in June 2008. Doc. 1 at ¶¶ 17, 20. Therefore, to have a timely claim, Melton should have pursued his administrative remedies within 45 days of these alleged actions. Moreover, even

if the court ignores the actual adverse actions Melton cites in his brief and focuses instead only on Melton's "most recent" allegation of discrimination, i.e. that the FBI constructively discharged him on June 26, 2009, Melton's claim is still untimely.  To preserve this claim, Melton should have consulted an EEO counselor by August 10, 2009.  Instead, according to the information Melton submitted with this lawsuit, Melton initiated contact with the EEO office on September 21, 2011, over two years after the August 2009 deadline.  Doc. 1-1 at 1. Moreover, since the premise of a constructive discharge claim is that the working conditions are "so intolerable" that a reasonable person in Melton's position had no choice except to resign, *Fitz v. Pugmire Lincoln-Mercury, Inc.,* 348 F.3d 974, 977 (11th Cir. 2003) (citation omitted), Melton cannot legitimately contend that he only became aware two years later of the alleged intolerable conditions that forced him to resign in 2009.  It would require the suspension of disbelief to credit such a contention in a constructive discharge claim.  In fact, such an assertion defies logic since Melton cannot claim constructive discharge unless he knew about the purported intolerable working conditions when he resigned in 2009.

  Melton also failed to contend that equitable tolling of the 45-day period is warranted and this court finds no reason to apply that extraordinary remedy in light of  Melton's admission that Moore advised him that he had 45 days to file an

EEO Complaint after Melton received the OPR letter.[4]  Doc. 1 at ¶ 23.  Indeed, Melton previously filed an EEO Complaint in a timely manner, 4:10-cv-3205-CLS, doc. 6-1 at 15, 6-2 at 3,[5] and therefore cannot contend he has no familiarity with the deadline requirement.  Moreover, Melton failed to establish that his untimeliness was due to the "action[s] of the agency."  *Wade*, 796 F.2d at 1377.  Consequently, Melton has failed to establish that this court has subject matter jurisdiction over his retaliation claim.

## IV. CONCLUSION

In light of Melton's failure to state a claim upon which relief can be granted, Defendant's motion to dismiss is **GRANTED**.

**DONE** this 31st day of January, 2013.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[4] The 45-day time limit can be extended if the individual shows that he "was not notified of the time limits and was not otherwise aware of them, that [ ] he did not know and reasonably should not have [ ] known that the discriminatory matter or personnel action occurred."  29 C.F.R. § 1614.105(a)(2).  Furthermore, if an employee is "hampered by the action of the agency," he should not be penalized for failing to adhere to the exhaustion requirements.  *Wade v. Sec. of Army*, 796 F.2d 1369, 1377 (11th Cir. 1986).

[5] The EEO Complaint was timely as to Melton's claims regarding the OPR proposed sanctions letter although this claim was dismissed on other grounds.  4:10-cv-3205-CLS, doc. 6-2 at 3.